**Lena CULPEPPER–SMITH**

v.

**UNITED STATES of America.**

No. CIV. A. 96–5855.

United States District Court,
E.D. Pennsylvania.

June 8, 1999.

John J. Miravich, Stevens and Lee, Reading, PA, for Plaintiff.

Angelo A. Frattarellu, Shannon Cohen, U.S. Dept.of Justice, Trial Atty's, Tax Division, Washington, DC, for Defendant.

---

## *MEMORANDUM*

O'NEILL, District Judge.

Having obtained the agreement of the Internal Revenue Service to abate an assessment of $150,000, including interest and penalties, dating from an alleged underpayment on her 1980 tax return, plaintiff requests $40,912.50 in attorney fees and costs as the "prevailing party" pursuant to § 7430 of the Internal Revenue Code. 26 U.S.C. § 7430. The government tacitly concedes that plaintiff is entitled to fees as a prevailing party insofar as she avoided the 1980 tax assessment, but contends that plaintiff is not entitled to recover legal costs incurred in pursuing several other issues on which she was not successful. The government also contends that certain other fees and costs sought by plaintiff are not recoverable under § 7430. For the reasons set forth below, I will reduce the requested fee award but not by as much as sought by the government.

## BACKGROUND

As set forth in a previous opinion by the late Judge McGlynn, the facts giving rise to this litigation are as follows:

In 1980, plaintiff invested as ·a sole proprietor in the lease of certain audio recordings for a 7½·year period. The following year, plaintiff filed a timely federal income tax return for 1980 claiming no taxes were owed for that year because her claimed deductions and investment. credit eliminated. any tax liability.

Ten years later, sometime in 1991, the IRS began sending plaintiff notices of its intent to levy on her for failure to pay taxes for 1980. On March 6, 1991, the IRS assessed plaintiff for unpaid federal income tax, interest and possible penalties for the 1980 tax year. Plaintiff claims the assessment was illegal because the IRS did not send her a notice of deficiency as required by 26 U.S.C. § 6212. On April 15, 1994, the IRS credited plaintiff's 1993 tax refund of $2,618 against the 1980 tax liability. It did the same with her 1995 tax refund of $2,640 on May 13, 1996. Plaintiff brought this lawsuit to enjoin the Government's collection of the ·assessment amount and recover her 1993 and 1995 tax refunds, along with damages and litigation costs.

The Government now concedes the IRS never sent plaintiff a statutorily-required notice of deficiency, and that the assessment for tax year 1980 was therefore illegal. It has agreed to abate the assessment, but refuses to return plaintiff's 1993 and 1995 tax refunds which were applied to the 1980 tax deficiency.

*Culpepper–Smith v. United States,* 1998 WL 544964, at *1 (E.D.Pa. Aug.24, 1998) (citations to the record omitted).

The government made its concession on June 2, 1998, at which time it also represented that it would abate the 1980 assessment and asked plaintiff to stipulate to

dismissal of the case.[1] Plaintiff refused to sign the proposed stipulation for reasons that are not altogether clear, but appear to have included. the facts that the government did not concede that the assessment was untimely (and therefore in theory could have issued another notice of deficiency and again sought assessment), and that the proposed stipulation would have waived plaintiff's claim for attorney fees and costs. At any rate, so far as the record shows there were no addition proposals or even negotiations for a stipulated dismissal, and on June 29, 1998 the government filed a motion to·dismiss the case. The government argued that plaintiff's claims were mooted by its concession and that the court lacked authority to enter an injunction in plaintiff's favor. On July 15 and. 21, plaintiff filed three cross-motions: (1) a motion for summary judgment as to plaintiff's right to a permanent·injunction, attorney fees and costs,·and damages; (2) a motion to amend her complaint to specifically assert claims for return of the 1993 and 1995 tax overpayments; and (3) a motion to enforce the IRS's concession and order the levies against her removed and to prohibit any future attempt by the IRS to collect on the 1980 assessment. *See id.* at *1–*2.

On August 24, 1998, Judge McGlynn granted defendant's motion to dismiss plaintiff's claim for an injunction against the 1980 assessment "subject to the IRS' abatement of the assessment and removal of all levies against plaintiff's property and/or funds." *Id.* at *11. The Court also dismissed plaintiff's claim for an injunction returning to her the 1993 and 1995 tax overpayments for lack. of subject jurisdiction, finding that plaintiff had failed to demonstrate that she exhausted administrative remedies available to her on these claims. As to plaintiff's cross motions, the Court (1) denied·as futile the motion to amend to add the refund claims; (2) denied the motion to enforce the IRS' con-

---

1. *See* Pl.'s Reply Brief, Ex. A. The Stipulation of Dismissal proposed by the IRS· provided: "The parties hereto . . . stipulate and agree that this action be dismissed with prejudice, the parties to bear their own costs and expenses, including attorney fees."

cession as moot, again subject to the IRS removing any liens and levies against the plaintiff's property; and (3) denied the motion for summary judgment as to a permanent injunction and as to plaintiff's claims for damages for wrongful collection of taxes pursuant to 26 U.S.C. § 7433(a) and denied without prejudice to renewal plaintiff's motion for litigation expenses. *Id.* at *7–*11. On March 23, 1999, the parties stipulated to dismissal of plaintiff's remaining claim under § 7433(a) for damages for wrongful tax collection.

In opposing plaintiff's fee petition, the government's main contention is that while plaintiff was successful in opposing the 1980 assessment, she should not have continued the litigation after the government's June 2, 1998 concession. Having lost on all issues litigated thereafter, the government contends, plaintiff is not entitled to fees and costs for her litigation of the government's motion to dismiss and her summary judgment motion.

In addition, the government contends that plaintiff may not recover fees incurred prior to early August, 1996 (i.e., prior to preparation of the complaint). According to the government, a taxpayer can recover only those attorney fees incurred in court proceedings. Finally, the government argues that pursuant to § 7430(c)(2) plaintiff is not entitled to recover costs incurred prior to her receipt on August 16, 1996 of the IRS' Problem Resolution Office's final response to her inquiry concerning the 1980 assessment.

In support of its various contentions, the government cites provisions of the statute but no case law whatsoever. Nor has the government set forth how much of plaintiff's claimed fees and costs should be subtracted as to each of its three contentions should the Court agree with any of them.

## DISCUSSION

The central issue here is whether plaintiff is entitled to fees and expenses incurred in litigating the government's motion to dismiss and her responsive cross-motions after the government's June 2, 1998 concession that plaintiff had not received the required notice of deficiency. The government contends that plaintiff cannot be considered a "prevailing party" pursuant to § 7430(a) after the government's June 2, 1998 concession because she lost all issues she continued to press after that date. In the alternative, the government argues that plaintiff "unreasonably protracted" the litigation after the government's concession and therefore is not entitled to fees and costs for that period pursuant to § 7430(b)(3).

The relevant portions of the statute provide:

### § 7430. Awarding of costs and certain fees

**(a) In general.**—In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for—

(1) reasonable administrative costs incurred in connection with such administrative proceeding within the Internal Revenue Service, and

(2) reasonable litigation costs incurred in connection with such court proceeding.

**(b) Limitations.—**

**(1) Requirement that administrative remedies be exhausted.**—A judgment for reasonable litigation costs shall not be awarded under subsection (a) in any court proceeding unless the court determines that the prevailing party has exhausted the administrative remedies available to such party within the Internal Revenue Service. Any failure to agree to an extension of the time for the assessment of any tax shall not be taken into account for purposes of determining whether the prevailing party meets the requirements of the preceding sentence.
\* \* \* \*

**(3) Costs denied where party prevailing protracts proceedings.**—No award for reasonable litigation and administrative costs may be made under subsection (a) with respect to any portion of the administrative or court proceeding during which the prevailing party has unreasonably protracted such proceeding.

A "prevailing party" is defined as follows, in pertinent part. *See* § 7430(c)(4):

**(4) Prevailing party.—**

**(A) In general.**—The term "prevailing party" means any party in any proceeding to which subsection (a) applies (other than the United States or any creditor of the taxpayer involved)—

(I) which—

(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented[.]

* * * *

**(B) Exception if United States establishes that its position was substantially justified.—**

(I) General rule.—A party shall not be treated as the prevailing party in a proceeding to which subsection (a) applies if the United States establishes that the position of the United States in the proceeding was substantially justified.

* * * *

It is not immediately clear from the definition of "prevailing party" whether a court is authorized to divide up proceedings in stages for which there are different "prevailing parties" and award attorney fees accordingly. The statute seems to require that the prevailing party be determined with respect to the entire litigation, defining the prevailing party as the party that has "substantially prevailed with respect to the amount in controversy" or "with respect to the most significant issue or set of issues presented." Looking at the entire litigation in these terms, plaintiff is clearly the prevailing party.

On the other hand, it also seems obvious that a plaintiff cannot prevail on the main issue of the litigation and then seek to pursue additional claims for which the government will have to pick up the litigation expenses—regardless of the outcome—on the mere strength of the plaintiff's initial victory. The perverse effects of a contrary rule are obvious. The government would have a reduced incentive to resolve tax disputes by concession as quickly as possible to avoid litigation expenses, because as soon it made a concession on the major subject of the litigation it would become liable for litigation expenses at the whim of the adverse (now "prevailing") party. Conversely, the taxpayer (and/or his or her counsel) would have an incentive to engage in protracted, essentially risk-free litigation at the expense of the government.

Moreover, when considered all together, the many qualifications and limitations on fee awards imposed by § 7430 suggest that Congress intended that courts consider awards carefully and on a fact-intensive basis that would frequently necessitate an issue-by-issue analysis. Thus, a court must consider not only whether the taxpayer "substantially prevailed," but also whether the government's position was "substantially justified," whether the taxpayer exhausted all of his or her administrative remedies, whether the taxpayer unreasonably protracted the proceedings, and whether the legal expenses sought are "reasonable." In cases involving more than one tax issue, these inquiries may not make sense or be possible without issue-by-issue analysis. In this case, for example, the taxpayer exhausted her administrative remedies so far as was possible with regard to the 1980 assessment, but failed to exhaust her remedies with regard to the refund claims. Similarly, different issues may require separate analysis as to the reasonableness of the government's position and whether the proceedings were unreasonably protracted by the taxpayer.

For these reasons, it appears clear to me, as it has to others, that courts deciding fee petitions under § 7430 may

consider different phases and/or issues of the litigation discretely. *Compare, e.g., Ragan v. Commissioner of Internal Revenue,* 135 F.3d 329, 334 (5th Cir.1998) (taxpayer entitled to expenses incurred in defending against meritless claim by IRS for repayment of one-half of refund on her joint return that IRS had paid to her husband's bankruptcy estate, but was not entitled to expenses pursuing her meritless claim against IRS for one-half of same refund); *Kenagy v. United States,* 942 F.2d 459, 465–467 (8th Cir.1991) (considering justifiability of government's position separately as to each of four fiscal-year quarters for which taxpayer allegedly underpaid payroll taxes); *Boatmen's First National Bank v. United States,* 723 F.Supp. 163, 170–171 (W.D.Mo.1989) (finding support in statutory framework of § 7430 and from considerations of fairness and good policy for proposition that court could consider different issues in single action separately for purposes of fee and cost award determination).

■ Here, there are a number of different issues that are easily distinguished in analysis of the fee and costs petition. First, there is plaintiff's challenge to the 1980 assessment. It is undisputed that this claim was the most substantial one in the litigation, that plaintiff prevailed on it, that the government's position was not substantially justified, and that plaintiff exhausted her administrative remedies. Thus, plaintiff is entitled to fees and costs incurred in challenging the assessment at least until the government's concession.

■ The litigation that followed the government's concession involved plaintiff's claims for the 1993 and 1995 refunds, for injunctive relief to enforce the government's concession and for judgment as a matter of law on the assessment issue, and for damages under § 7433. As to the refund claim, plaintiff is not entitled to fees and costs for these claims because she has not established that she exhausted administrative remedies for them, *see* § 7430(b)(1); to the contrary, Judge McGlynn expressly determined that the

claims had to be dismissed for failure to exhaust administrative remedies. As to the § 7433 claim, Judge McGlynn's opinion denying summary judgment on this claim, which has since been dismissed by stipulation of the parties, is sufficient to establish that the government's position in opposing the claim was justified. *See* 1998 WL 544964, at *8–10.

The litigation concerning plaintiff's motion to enforce the abatement of the 1980 assessment and the government's motion to dismiss presents a more difficult question. Here, Judge McGlynn denied the plaintiff's motion as moot and granted defendant's, but in both instances did so subject to the IRS' abatement of the assessment and/or removal of all liens or levies against plaintiff's property. The government appears to argue that plaintiff should have simply terminated the litigation voluntarily after she received the government's concession. But the government offers no argument for why the plaintiff should have been satisfied merely with the concession letter, and there is no evidence that the government took any concrete action to provide more solid assurance to her, such as immediately removing the liens against her, or officially renouncing any future assessment on the alleged 1980 deficiency, or moving to have judgment entered against itself. The government did offer to stipulate to dismissal, but the proposed stipulation included language waiving plaintiff's right to seek fees under § 7430. The government has presented no evidence that it subsequently offered better terms or even attempted to negotiate different dismissal language. The government cannot avoid subsequent litigation expenses caused by its own unjustified position merely by conceding the position and then offering to stipulate to dismissal under terms that reasonably are viewed as unacceptable by the other party.

■ In light of these circumstances, it seems to me that plaintiff's attempts to enforce the government's concession and to obtain judgment in her favor on the abatement issue and her opposition to de-

fendant's motion to dismiss are best considered part of her overall effort to defend against the 1980 assessment—an effort on which she substantially prevailed and for which she is therefore entitled to fees. In addition, in light of the government's failure to offer evidence that plaintiff had any alternative to continued litigation other than the proposed stipulation of dismissal, which a reasonable litigant in plaintiff's shoes could well find unacceptable, I cannot conclude that plaintiff unreasonably protracted the litigation by continuing her litigation efforts after the government's concession letter.

Insofar as she reasonably continued to pursue the litigation, I also cannot find that plaintiff was unreasonable in continuing to press her claims for the 1993 and 1995 refunds and for damages under § 7433, even if she was ultimately unsuccessful on these issues. However, as established by Judge McGlynn's decision in its favor, the government clearly was substantially justified in opposing these claims.[2] Accordingly, plaintiff is not entitled to fees and costs attributable to her unsuccessful claims for the 1993 and 1995 refunds and for damages under § 7433. Because it is not possible to discern from counsel's records precisely what time was spent on these issues and what was not, I

will simply subtract one-third of the fees incurred between June 30, 1998 (when the government filed its motion to dismiss) and August 24, 1998, when the Court entered its opinion rejecting these claims. The total fees incurred during this period was ($12,647.41), so I will subtract $4,215.80 from the fee request.

2.

The government next contends that plaintiff is not entitled to legal fees incurred prior to "early" August 1996, when plaintiff filed her complaint, because such fees were not incurred "in connection" with a court proceeding as is required, according to the government, for them to be recovered under § 7430. (*See* Def. Brief at 5.) The government also contends that plaintiff is not entitled to any "costs" incurred prior to August 16, 1996, when she received the final response from the IRS' Problem Resolution office. (*See id.* at 6.)[3]

■ The government is incorrect in contending that attorney fees cannot be recovered for administrative as opposed to court proceedings. Section § 7430(c)(2) defines "reasonable administrative costs" to include "expenses, costs, and fees described in paragraph [ (c) ](1)(B)." § 7430(c)(2)(B).[4] Section (c)(1)(B) defines "reasonable litigation costs" to include attorney fees.[5]

---

2. Inexplicably, the government has not raised the "substantially justified" defense in opposing plaintiff's fee request. Nonetheless, in exercising my discretion under § 7430(a) in considering an award of litigation costs ("... the prevailing party *may* be awarded a judgment for reasonable administrative costs and/or reasonable litigation costs"), I will consider the "substantially justified" analysis because in my view it is clearly raised by and appropriately applied to the facts of this case.

3. The government has not set forth how much it seeks to avoid on these grounds, but it appears that plaintiff seeks fees and costs incurred prior to August 1996 in the amount of $3395.48. (*See* Pl.'s Ex. at 297, 332.)

4. Section 7430(c) provides:

(2) **Reasonable administrative costs.**—The term "reasonable administrative costs" means—

(A) any administrative fees or similar charges imposed by the Internal Revenue Service, and

(B) expenses, costs, and fees described in paragraph (1)(B), except that any determination made by the court under clause (ii) or (iii) thereof shall be made by the Internal Revenue Service in cases where the determination under paragraph (4)(C) of the awarding of reasonable administrative costs is made by the Internal Revenue Service. Such term shall only include costs incurred on or after whichever of the following is the earliest: (I) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals; (ii) the date of the notice of deficiency; or (iii) the date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals is sent.

5. Section 7430(c) provides:

Thus, "reasonable administrative costs" includes all of the same expenses, including attorney fees, covered by "reasonable litigation costs." The only differences between "administrative costs" and "litigation costs" are (1) in situations where all the proceedings are administrative, the IRS rather than the court determines what, if any, "reasonable administrative costs" should be recovered by the taxpayer; and (2) administrative costs may only be awarded after certain defined dates, which are the earliest of the date when the taxpayer received the notice of deficiency; the date when the taxpayer could first obtain administrative review of a proposed tax deficiency notice; or the date of the decision of the IRS Appeals Office. § 7430(c)(2)

Based on my examination of counsel's time records, I find that as of the beginning of August 1996 counsel's services were clearly "in connection with the court proceeding." The question, then, is whether the modest services rendered by plaintiff's counsel between April and July 1996 were connected with either adminis-

trative proceedings or the court proceeding within the meaning of § 7430(a) and (c).

■ I think these expenses can be fairly characterized as either litigation costs or administrative costs and are therefore recoverable. Most of the attorney services, amounting to $3248.02 in fees, involved communications with the IRS. (*See* Pl.Ex. at 297—301.) Since plaintiff apparently never received either a proposed or actual notice of deficiency, she never had access to normal administrative review processes, including review by the Appeals Office. Thus, counsel's communications with the IRS might be considered attempts to obtain administrative redress through "administrative proceedings" despite the fact that normal avenues of redress were blocked. Considered in this manner, counsel's fees were "administrative costs" within the meaning of § 7430.[6] In the alternative, counsel's services and other expenses may be considered to have been incurred "in connection with the court proceeding" because (1) plaintiff was never given the opportunity to proceed through normal ad-

---

(1) **Reasonable litigation costs.**—The term "reasonable litigation costs" includes—
    (A) reasonable court costs, and
    (B) based upon prevailing market rates for the kind or quality of services furnished—
    (I) the reasonable expenses of expert witnesses in connection with a court proceeding, except that no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States,
    (ii) the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and
    (iii) reasonable fees paid or incurred for the services of attorneys in connection with the court proceeding, except that such fees shall not be in excess of $125 per hour unless the court determines that a special factor, such as the limited availability of qualified attorneys for such proceeding, the difficulty of the issues presented in the case, or the local availability of tax expertise, justifies a higher rate.
* * * *

"Court proceeding" is defined as "any civil action brought in a court of the United States . . ." § 7430(c)(6).

**6.** The government contends that plaintiff is not entitled to any "administrative costs" incurred before August 16, 1996, when she received the final response of the IRS Problem Resolution Office. Presumably, the government contends that that response should be considered a substitute for the decision of the Appeals Office which, had plaintiff ever obtained it, would have marked a date after which her fees and other expenses would have been recoverable. *See* § 7430(c)(2). On the facts of this case, the government's position is absurd. As plaintiff has insisted and the government now concedes, plaintiff never got a proposed or actual deficiency notice, and therefore did not have the chance to seek review of a proposed deficiency before the Appeals Office. Accordingly, the triggering events of § 7430(c)(2) have no application to this case. According to the government's original position, moreover, plaintiff's "administrative costs" would have become recoverable by 1991 at the latest, when the IRS began to send her levy notices, having purportedly already sent her a deficiency notice.

ministrative channels for lack of notice and (2) counsel's services involved communications with the IRS and other preparatory work that would normally (and laudably) precede the filing of a complaint. In either event, plaintiff is entitled to attorney fees and costs incurred between April and July 1996.

## CONCLUSION

I find, as the government tacitly concedes, that plaintiff was the "prevailing party" in this litigation and therefore is entitled to attorney fees. I also find that plaintiff did not unreasonably protract the proceedings by continuing to press the litigation after the government's "concession." On the other hand, the government was substantially justified in opposing several of the claims plaintiff continued to press and plaintiff may not recover fees incurred in pursuing these claims. In sum, I will award plaintiff all but $4,215.80 of the $ 40,912.50 in fees and costs that she has requested, for a total of $36,696.70. IN THE UNITES STATES DISTRICT COURT

## *ORDER*

AND NOW this 8th day of June, 1999, upon consideration of plaintiff Lena Culpepper–Smith's motion for an award of attorney fees and costs and the response of defendant United States, it is hereby ORDERED that defendant shall pay to plaintiff $36,696.70 in attorney fees and costs.