**W. James OELSNER & Carol P. Oelsner, Plaintiffs,**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS OF THE UNITED STATES, FOR THE VIRGIN ISLANDS BUREAU OF INTERNAL REVENUE, Defendant.**

Nos. CIV. 96–0091(STT), CIV. 96–0064(STT).

District Court, Virgin Islands, D. St. Thomas and St. John.

Dec. 3, 2003.

David Bornn, The Bornn Firm PLLC, St. Thomas, VI, for Plaintiffs, W. James Oelsner & Carol Oelsner.

Carol Thomas–Jacobs, Virgin Islands Department of Justice, Civil Division, St. Thomas, VI, for Defendant, The Government of the U.S. Virgin Islands.

## OPINION

BROTMAN, District Judge.

This matter is before the Court on a motion by the Plaintiffs, W. James Oelsner and Carol Oelsner (the "Oelsners"), seeking to recover attorney's fees and litigation costs related to their challenge to a tax deficiency determination and a "jeopardy assessment" issued by Virgin Islands Bureau of Internal Revenue (BIR). Under certain circumstances § 7430 of the U.S. Internal Revenue Code, as mirrored in Virgin Islands law, permits a court to award a "prevailing party" reasonable administrative and/or litigation costs incurred in connection with a court proceeding initiated to challenge the BIR's determination of a tax deficiency. Because the position of the BIR in issuing the notice and assessment against the Oelsners was substantially justified, the Court finds that the Plaintiffs are not entitled to recover under § 7430. Accordingly, the motion will be denied.

The narrow inquiry presently before the Court is actually the final remnant of a complex set of cases arising out of a group jeopardy assessments and deficiency notices issued by the BIR against the Oelsners and related entities in late 1995 and early 1996. By resolving this matter today, the Court completes the final chapter in a long history of Oelsner related litigation. Much of this history has already been recounted elsewhere, see WIT Equipment Co., Inc. v. Director, Virgin Islands Bureau of Internal Revenue, 185 F.Supp.2d 500 (D.Vi.2001), but some of the facts bear repeating here.

## I. Factual and Procedural Background

In separate letters dated December 21, 1995, the BIR announced its intention to make immediate jeopardy assessments against the Plaintiffs, W. James and Carol Oelsner, and two other corporations related to Mr. Oelsner: WIT Equipment Company (WIT) and West Indies Transport Incorporated (West Indies). Under the Internal Revenue Code and similar provisions of Virgin Islands Code, the jeopardy assessments allowed the collecting agency to make collections without awaiting the outcome of any challenge brought by the taxpayer. I.R.C. § 6861; 33 V.I.C. § 1361. On January 12, 1996, three weeks after the jeopardy assessments were made, the BIR sent notices of deficiency to the Oelsners and the two corporations, alleging additional tax liability based on adjustments the Bureau had made. All six of the BIR notices were subsequently challenged in this Court.[1] It appears from the

---

[1]. These challenges were bought as six separate actions: three petitions for Redetermination of Tax Deficiency, *Wit Equipment Co., Inc., v. V.I. Bureau of Internal Revenue,* Civ. No.1996–0062 (D.V.I.); *West Indies Transport v. V.I. Bureau of Internal Revenue,* Civ. No.1996–0063 (D.V.I.); *W. James Oelsner & Carol Oelsner v. V.I. Bureau of Internal Reve-* nue, Civ. No.1996–0064 (D.V.I.), and three challenges to the Jeopardy Assessments, *Wit Equipment Co., Inc., v. V.I. Bureau of Internal Revenue,* Civ. No.1996–0090 (D.V.I.); *West Indies Transport v. V.I. Bureau of Internal Revenue,* Civ. No.1996–0091 (D.V.I.); *W. James Oelsner & Carol Oelsner v. V.I. Bureau of Internal Revenue,* Civ. No.1996–0092 (D.V.I.).

record that none of the jeopardy assessments were ever enforced.

The notice sent to James and Carol Oelsner asserted a tax deficiency of $499,312.40 for the 1993 tax year, together with $87,187.14 in interest and a penalty of $124,828.10. The deficiency was based on two adjustments to their 1993 return: an upwards adjustment of their ordinary income in the amount of $45,000, and a disallowance of a non-business bad debt deduction in the amount of $1,850,000. The additional amounts arose from the restructuring of their tax liability caused by these two adjustments.

Although it was signed by the Director, the deficiency determination was made on the recommendation of Harold Hodge, the BIR revenue agent who was assigned to the cases. Agent Hodge's recommendations were primarily, if not exclusively, based on an independent report prepared by the accounting firm of Price Waterhouse. The Price Waterhouse report ("PW report" or simply "the report") had been solicited by the U.S. Attorney's Office in late 1995 as Mr. Oelsner, WIT, and West Indies, awaited sentencing in this Court on sixteen counts of visa fraud, environmental crimes, conspiracy and racketeering. *See United States v. West Indies Transp., Inc.*, 127 F.3d 299 (3d Cir.1997) (affirming convictions and sentences), *cert denied*, 522 U.S. 1052, 118 S.Ct. 700, 139 L.Ed.2d 644 (1998). The criminal convictions were based on the business activities and labor practices of WIT and West Indies in their dry dock, ship repair, and barge towing operations in Krum Bay, St. Thomas. Oelsner was the chief operating officer of West Indies and the sole operator of WIT. *WIT Equipment*, 185 F.Supp.2d at 504.

At the sentencing phase of the trial, Mr. Oelsner had represented that he had limited assets with which to satisfy a monetary judgment. The U.S. Attorney's office solicited Price Waterhouse to prepare a report in order to refute this claim. The overall conclusion of the report was that Mr. Oelsner was the controlling individual in several corporations with significant assets, including WIT and West Indies. The PW report speculated that Mr. Oelsner was the actual owner of these and other corporations through a "sophisticated organizational structure which shields ownership of his assets." This was accomplished through multiple layers of ownership, comprising a network of U.S. corporations that were in turn owned by a Panamanian corporation with shares held in "bearer bonds," making it nearly impossible to verify the true owner. Ownership and control were hence inferred based on an examination of the corporate structure and transactions between the corporations. Relying on the report, this Court ordered all three defendants to pay substantial fines and restitution.

The BIR thereafter obtained a copy of the Price Waterhouse report and used it to inform its own investigation into the tax liability of the Oelsners, WIT, and West Indies. *Id.* With regard to the determination of Oelsners' tax liability in particular, the PW report appears to be the BIR's sole source of information. Agent Hodge relied on a 1994 document attached to the report when he concluded that a $45,000 commission owed to them by Harbour Point, Inc. (one of Mr. Oelsner's closely held corporations, according to the report) for arranging the sale of real property was constructively received by the Oelsners in 1993 and should be reflected by an upwards adjustment of the couple's ordinary

The two Oelsner cases were subsequently consolidated on docket number 1996–0091, and the instant motion was stayed pending the resolution of the related cases. At this point, all of the challenges have been litigated or otherwise resolved.

income for that year. The $1,850,000 non-business bad debt deduction was likewise denied based on the report.[2] The deduction was apparently the result of the sale of Mr. Oelsner's 2.1 million dollar estate in Palm Beach. Oelsner had entered into an agreement in 1990, under which the estate had been used to guarantee a letter of credit issued to Harbour Point.

After Harbour Point defaulted on its obligations, Oelsner sold the Palm beach estate in 1993 and applied the proceeds to Harbour Point's debt. In order for a payment by a guarantor to be deductible as a worthless bad debt, a number of conditions must be met. *See* Treasury Reg § 1.166–9(c),(d),(e). In particular: (1) the payment may not be made in contribution to capital in a corporation by its shareholders; (2) the agreement to be guarantor must be made for consideration; and (3) the agreement must have been made before the debt became worthless. Based on the report's conclusions regarding Mr. Oelsner's ownership interest in Harbour point, the BIR decided to disallow the deduction for failure to satisfy these requirements. Relying on the above transactions, Agent Hodge reviewed the Oelsner's 1993 tax return, making the disputed adjustments.

In April of 1996, the Oelsners filed a petition to redetermine their liability, claiming that the BIR adjustments were in error. They moved for summary judgment nearly two years later—in January of 1998. That motion was never decided as the parties were able to reach a stipulated agreement within months of the filing. Under the agreement, dated June 11, 1998, the party's stipulated that "there is no income tax deficiency for the 1993 tax year, that no additional tax, penalties or interest apply, and that judgment should be issued in favor of the petitioners." In short, the Oelsners' challenge was resolved in a stipulation of zero liability.

## II. Discussion
### Virgin Islands Attorney's Fees Provisions

The Oelsners have moved to recover attorney's fees and costs incurred in their challenge to the tax deficiencies. Under the traditional "American Rule" a prevailing party in a civil action is not automatically or even ordinarily entitled to an award of attorney's fees and costs from the losing party. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Over the years, however, the exceptions to the rule have grown, and numerous federal statutes have been enacted which allow a prevailing party to recover its attorney's fees in specific types of actions. *See Buckhannon Board & Care Home, Inc. v. W. Va. Dept. Health & Human Resources*, 532 U.S. 598, 602–603, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (discussing the American rule and the various federal fee shifting statutes which deviate from it); *Brytus v. Spang & Company*, 203 F.3d 238 (3d

2. The deposition of Agent Hodge reveals the extent of BIR reliance on the report:
    Q. Did you rely on any other information in denying the bad debt deduction?
    A. No, it came from this report.
    Q. So that's the only source of information on which you based that disallowance; is that correct?
    A. That's the main source.
    Q. Well, what was the secondary source?
    A. Well, as I said, that's the main thing. There was no, really no other—
    Q. On the—
    A. In reality, in reality, the adjustments to Mr. Oelsner's 1993 income tax return are based mainly on this report.

    \* \* \* \* \* \*

    Q. Okay. So it's not based on anything outside of that report.
    A. No, no, no, not—
    (Hodge Depo. at 76–77.)

Cir.2000) (same). Section 7430 of the Internal Revenue Code is one such provision. I.R.C. § 7430 (1994). It allows a prevailing party to recover reasonable attorney's fees and costs expended in administrative proceedings and courtroom challenges to federal tax assessments.

Although no corollary to § 7430 exists in the Virgin Islands Code, it is applied with equal force against the Virgin Islands Government by virtue of the Territory's "mirror system" of taxation. The Naval Service Appropriation Act of 1922 extended application of the U.S. tax code to the Virgin Islands while simultaneously requiring that the taxes collected would be paid to the Government of the Virgin Islands. By doing so, the Act established a system of tax liability under which a taxpayer's obligation to the Virgin Islands is equivalent to what the United States would collect on the same income; i.e. the "mirror system."

█ The mirror system operates through a rule of construction applied by the Internal Revenue Service, the Virgin Islands, and the courts. *WIT Equipment*, 185 F.Supp.2d at 503. In short, the I.R.C. and its regulations are adapted to the Virgin Islands by substituting the words "Virgin Islands" for "United States." In many cases, the adapted tax provisions have been codified in title 33 of the Virgin Islands Code, including the provisions relied upon by the BIR when issuing the notices in the instant case. However, even those provisions of the I.R.C. that have not been the subject of positive enactment in territorial law, such as § 7430, will apply with equal force in the Virgin Islands. *Cf. Abramson Enterprises Inc. v. Virgin Islands*, 994 F.2d 140, 145 (1993) (incorporation limited to those provisions "not manifestly inapplicable or incompatible

with a separate territorial income tax") (quoting *Chicago Bridge*, 430 F.2d at 976). In light of the foregoing principles, the relevant subsection of § 7430 as applied in the Virgin Islands defines a "prevailing party" entitled to recover fees as any party,

> [W]hich establishes that the position of the [Virgin Islands] in the proceeding was not substantially justified, which has substantially prevailed with respect to the amount in controversy, or has substantially prevailed with respect to the most significant issue or set of issues presented, and [which complies with certain other provisions found in the Equal Access to Justice Act].

I.R.C. § 7430(c)(4)(A) (1994) *amended by* I.R.C. § 7430(c)(4)(A),(B).

█ In the instant case, it can hardly be disputed that the Plaintiffs have substantially prevailed. The significant disparity between the half million dollar deficiency claimed by the BIR at the commencement of the litigation and the stipulation of zero liability at the conclusion is alone sufficient to establish that the Plaintiffs have substantially prevailed with respect to the amount in controversy. *See Nicholson v. Comm'r of the Internal Revenue Service*, 60 F.3d 1020, 1030–31 (3d Cir.1995). Since the Government has not even raised the issue of compliance with the relevant provisions of the Equal Access to Justice Act, the only remaining dispute centers on whether the position of the government was substantially justified in the proceedings.

### Substantial Justification

█ The applicable provisions of § 7430 place the burden squarely on the Plaintiff to establish that the position of the Virgin Islands was not substantially justified.[3] A

---

**3.** For actions commenced after July 30, 1996, § 7430 has been amended to place the burden on the government to show that its position is

substantially justified. I.R.C § 7430(c)(4)(B) (as amended by the Taxpayer Bill of Rights 2,

party can meet its burden under § 7430(c)(4)(A)(I) by demonstrating that the litigation position was not justified to a degree that would satisfy a reasonable person or, in other words, that the government's position has "no reasonable basis in law and fact." *Nicholson,* 60 F.3d at 1025–26; *see also Pierce v. Underwood,* 487 U.S. 552, 586, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (finding the two standards equivalent and citing the Circuit Court cases that have used the former, including *Brinker v. Guiffrida,* 798 F.2d 661, 664 (3d Cir.1986)).

The degree of diligence exercised by a taxing agency is one factor to be considered in whether the government's litigation position is substantially justified. There can be no reasonable basis in law and fact, and hence no substantial justification, without a diligent investigation of the case. *Nicholson,* 60 F.3d at 1029. The BIR plainly admits that the sole basis for its determination of the tax deficiency was the independent report prepared by Price Waterhouse,[4] and not any facts subsequently discovered by Agent Hodge. However, this is not the same as saying that a diligent investigation was not carried out.

■ A diligent investigation does not require blind duplication of facts already known and investigations already undertaken. To be sure, the PW report does not provide any "smoking gun" of tax liability, but it does provide factual conclusions which, unless refuted, provide a justification for the BIR's actions. The real information the BIR needed was not contained in the report: information regarding the true ownership of Harbor Point

and the nature of the transactions with W. James Oelsner. Where, as here, a well documented and reliable outside report sheds light on a taxpayer case, diligence does not require the government duplicate an inquiry already undertaken. There is no indication that, had Hodge done so, he would have found any additional or different information than that contained in the report. *Cf. Nicholson,* 60 F.3d at 1029 (finding a lack of substantial justification where adequate investigation would have revealed erroneous assumptions). Rather, the additional information the BIR needed was in the hands and the mind of Mr. Oelsner. This is amply illustrated by the Oelsners' Memorandum in Support of Summary Judgment. The Plaintiffs' January 1998 Memorandum is supported by no less than seven documents shedding additional light on the transactions at issue, as well as an affidavit by W. James Oelsner explaining the circumstances of the guaranty that led to the bad debt deduction in a level of detail not before seen.

In an action to redetermine a tax deficiency, the burden is on the petitioners to establish that the BIR's tax assessment is incorrect. Tax Ct. R. 142 (placing burden on petitioner); L.R. Civ. P. 71A.1 (making tax court rule 142 applicable to such actions in the district court). Even though the Oelsners bore the burden to establish that the BIR determination was either legally or factually incorrect, they did not produce a complete explanation of their deductions until they filed their motion for summary judgment—nearly two years after the petition was filed. Despite the documentation, the crucial conclusion reached by the Price Waterhouse Re-

---

Pub.L. No. 104–168, 110 Stat. 1452 (1996); *see e.g. Gibbs v. United States,* 1998 WL 226773 at *1 n. 2 (D.N.J. Jan 14, 1998). Because this action was commenced before that date, the unamended provisions of § 7430 will apply.

4. "Based on information in this report, Agent Hodge made adjustments to Petitioner's 1993 income tax return." Def.'s Mem. Opp. Summ. J. at 2.

port—and adopted by the BIR—that the Oelsners were shareholders in Harbor Point was not refuted. In fact, the BIR opposed the motion for summary on the basis of that failure of proof. In light of the complex and secretive network of corporate ownership uncovered in the PW report, the Court cannot hold that the government was unreasonable in its insistence on evidence to the contrary.

As it happens, the government conceded the case shortly after the exchange of summary judgment papers. Certainly, the manner in which the case was finally resolved is another factor bearing on the "substantial justification" of the BIR's position. That the government concedes its case does not alone establish that its position was not substantially justified. *Nickell v. Director, Virgin Islands Bureau of Internal Revenue,* 1992 WL 510996 at *1 (D.Vi. April 22, 1992) (Resnick, Mag. J.) (citing *R.E. Dietz Corp. v. United States,* 939 F.2d 1(2d Cir.1991)). Yet it is plainly appropriate for a court to weigh that factor in making its determination, even if the relative weight it should be given and the position it supports will vary depending upon the context. *See Culpepper–Smith v. United States,* 50 F.Supp.2d 425, 429 (E.D.Pa.1999) (noting that attorney's fees claims are considered on a fact intensive and issue by issue basis); compare *Nickell,* 1992 WL 510996 at *1 (holding that where the Government takes time to reevaluate a matter and later concedes, its position is reasonable and substantially justified); with *Wade v. United States,* 865 F.Supp. 216, 219–220 (D.N.J.1994) (observing that allowing the government to defeat a claim for reimbursement merely because it belatedly conceded its position "would confound the remedial intent of the statute") (quoting and discussing *Hanson v. Commissioner,* 975 F.2d 1150, 1155–56 (5th Cir.1992)). The significance of the government's concession at a given point is left to the sound discretion of the trial court. *Id.*

As noted above, the Government conceded its case against the Oelsners in mid-1998, within months of the Petitioners' first significant proffer of documentation. In fact it appears from the record, that the government may have been interested in resolving the case a year earlier. According to Petitioners own June 1997 Discovery Memorandum, the Government's attorney had at that time already indicated "that the issues in this case may probably be resolved in favor of Mr. And Mrs. Oelsner." It is not clear to the Court why an agreement was not reached at that time. Nonetheless, an agreement was eventually reached. The Petitioners provide the Court will no basis to conclude that the Government's litigation position was so flawed as to lack a reasonable basis in law and fact.

### III.   Conclusion

For the reasons set forth above, the Court concludes that the government's litigation position with regard to the tax deficiency was substantially justified. Accordingly, Plaintiffs' motion for an award of attorney's fees and costs will be denied.