**WIT EQUIPMENT COMPANY, INC., Petitioner,**

v.

**DIRECTOR, VIRGIN ISLANDS BUREAU OF INTERNAL REVENUE, Respondent.**

No. Civ.A. 96–62.

District Court, Virgin Islands, D. St. Thomas and St. John.

Sept. 29, 2001.

Lawrence Hill, Richard Nessler, White & Case LLP, New York, NY, for Petitioner.

David A. Bornn, The Bornn Handy Law Firm, St. Thomas, USVI, for Petitioner.

Richard M. Prendergast, Assistant Attorney General, Virgin Islands Department of Justice, Christiansted, St. Croix, USVI, for Respondent.

## OPINION ON MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

BROTMAN, District Judge.

This case is one of six related actions brought by W. James Oelsner, his wife, Carol, and two Oelsner-affiliated companies, WIT Equipment, Inc. ("WIT") and West Indies Transport, Inc. ("West Indies"), challenging tax assessments issued by the Virgin Islands Bureau of Internal Revenue ("BIR"). The other five matters having been dismissed per stipulation of the parties, only WIT's petition for redetermination of its tax deficiency remains for disposition. Before the Court are (a) WIT's motion to dismiss its petition for lack of subject matter jurisdiction, which would effectively bar collection of the disputed tax liability; (b) the Government of the Virgin Islands' motion for summary judgment; and (c) WIT's cross-motion for summary judgment. The Court held oral argument on these motions on June 1, 2001, and herein issues its decision.

## I. VIRGIN ISLANDS TAX SYSTEM

Because tax jurisprudence in the U.S. Virgin Islands has several distinctive characteristics, a brief introduction is in order. Congress made the Internal Revenue Code ("I.R.C.") applicable to the Virgin Islands through the Naval Service Appropriation Act of 1922, which provides:

> The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in the Virgin Islands of the United States, except that the proceeds of such taxes shall be paid into the treasuries of said islands. . . .

48 U.S.C. § 1397. The effect of section 1397 is to create a "mirror system" of taxation in which Virgin Islands residents discharge their tax liability by paying income taxes directly to the Treasury of the Virgin Islands. *See generally Abramson v. Gov't of the Virgin Islands*, 994 F.2d 140 (3d Cir.1993); *Johnson v. Quinn*, 821 F.2d 212 (3d Cir.1987); *Great Cruz Bay, Inc. v. Wheatley*, 495 F.2d 301 (3d Cir.1974); *Chicago Bridge & Iron Co. v. Wheatley*, 430 F.2d 973 (3d Cir.1970), *cert. denied*, 401 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 809 (1971); *Dudley v. Comm'r*, 258 F.2d 182 (3d Cir.1958). The statute establishes the Virgin Islands as a separate tax jurisdiction with authority parallel to that of the U.S. Treasury Department. *Olive v. Isherwood, Hunter & Diehm*, 656 F.Supp. 1171, 1173 n. 3 (D.Vi.1987); *Danbury, Inc. v. Olive*, 627 F.Supp. 513, 515 (D.Vi.1986), *rev'd on other grounds*, 820 F.2d 618 (3d Cir.1987).[1]

---

1. The mirror system not only creates two separate taxation authorities, but also implicitly recognizes Virgin Islands residents' liability to both. The federal tax liability is discharged only to the extent that the resident properly reports all income and pays his or her Virgin Islands tax obligation. *See* 26 U.S.C. § 932(c)(4) (excluding from federal gross income all income reported on the taxpayer's Virgin Islands return); *Gov't of Virgin Islands v. O'Brien*, 21 V.I. 549, 559 n. 3, 1985 WL 47217 (Terr.V.I.1985) ("It is quite possible for the I.R.S. to investigate a local resident if it believes that person has not satisfied his U.S. tax obligations by filing locally."). Under the "equality principle," applied to the Virgin Islands in *Chicago Bridge*, "[t]he [Virgin Islands] tax to be paid ordinarily is measured by the amount of income tax the taxpayer would be required to pay to the United States of America if the taxpayer were residing in the continental United States." 430 F.2d at

The mirror system operates through a rule of construction applied by the Internal Revenue Service, the Government of the Virgin Islands, and the courts. The I.R.C. and its regulations are adapted by substituting the words "Virgin Islands" for the words "United States." *Johnson v. Quinn,* 821 F.2d at 214 (citing Rev. Rul. 73–315, 1973–2 C.B. 226). In many cases, the adapted I.R.C. provisions have been enacted as sections within title 33 of the Virgin Islands Code ("V.I.C."). Whether codified locally or not, however, all provisions of the I.R.C. have force in the Virgin Islands unless they are "manifestly inapplicable or incompatible with a separate territorial income tax." *Abramson,* 994 F.2d at 142; *Chicago Bridge,* 430 F.2d at 976; *see also* 33 V.I.C. § 1931(15) (defining "Virgin Islands income tax law" as "so much of the United States Internal Revenue Code as was made applicable in the Virgin Islands by ... Act of Congress").

Like all other U.S. taxpayers, Virgin Islands residents may litigate the amount of their income tax liability in two ways. First, the taxpayer may pay the deficiency and then bring a "refund" action in federal district court for the amount of the claimed overpayment. I.R.C. § 7422; 33 V.I.C. § 1692. Second, the taxpayer may bring a pre-payment action to redetermine the amount of the asserted deficiency. I.R.C. § 6213; 33 V.I.C. § 943. Under the federal code, the U.S. Tax Court has jurisdiction over redetermination actions. I.R.C. § 6213. Petitions for redetermination of Virgin Islands tax deficiencies, however, must be brought in the District Court of the Virgin Islands. 33 V.I.C. § 943(a); *see also Dudley v. Comm'r,* 258 F.2d 182 (3d Cir.1958) (holding that the Tax Court does not have jurisdiction to review a deficiency claimed by the Government of the Virgin Islands).[2] Nonetheless, "judicial review in the district court of asserted deficiencies ... [is] analogous to review in the tax court." *Pan Am. World Airways, Inc. v. Duly Authorized Gov't of Virgin Islands,* 459 F.2d 387, 391 n. 2 (3d Cir.1972). As is the case with other aspects of the federal and territorial tax codes, the Virgin Islands statutes governing redetermination of deficiencies substantially mirror their I.R.C. counterparts. *Compare* 33 V.I.C. §§ 942, 943 *with* I.R.C. §§ 6212, 6213. It follows that case law applying sections 6212 and 6213 is persuasive in Virgin Islands tax matters. Additionally, the District Court of the Virgin Islands has adopted a subset of the Tax Court Rules as its own local rules applicable to redetermination cases. L. Civ. R. 71A.1 (incorporating by reference Tax Court rules governing, inter alia, pleadings and the burden of proof).

## II. BACKGROUND

### A. Criminal Case and Subsequent Tax Litigation

This tax litigation springs from information gleaned during a 1996 criminal proceeding against James Oelsner, West Indies, and WIT. Oelsner and the two companies were convicted and sentenced in this Court on sixteen counts of visa fraud, environmental crimes, conspiracy,

---

975–76 (quoting *Wilson v. Kennedy,* 123 F.Supp. 156, 160 (D.Guam 1954), *aff'd,* 232 F.2d 153 (9th Cir.1956) (footnote omitted)).

**2.** The district court's jurisdiction over both refund and redetermination actions reflects the understanding that "the provisions of the internal revenue laws of the United States relating to tax administration and enforcement, especially those relating to the Tax Court, [are] without application to the Virgin Islands." *Dudley,* 258 F.2d at 187. In other words, certain procedural aspects of the Virgin Islands tax laws–including the forum in which taxpayers must pursue remedies–fall outside the mirror approach.

and racketeering. *See United States v. West Indies Transp., Inc.,* 127 F.3d 299 (3d Cir.1997) (affirming convictions and sentences), *cert. denied,* 522 U.S. 1052, 118 S.Ct. 700, 139 L.Ed.2d 644 (1998). The convictions concerned WIT and West Indies' labor practices in their dry dock, ship repair, and barge towing businesses at Krum Bay, St. Thomas, as well as those operations' pollution of the bay. *Id.* at 303–04. Oelsner was West Indies' chief operating officer, *id.* at 303, and the sole operator of WIT (Oelsner Aff. ¶ 1).[3]

During the criminal trial, the United States adduced evidence that West Indies had employed illegal immigrants as dock-workers, allowing a significant reduction in expenses for wages and wage taxes. *Id.* at 304. At sentencing, Oelsner represented that he had limited assets with which to satisfy a monetary judgment. Relying on a report by the Price Waterhouse account-ing firm ("Price Waterhouse report") which concluded that Oelsner in fact con-trolled several corporations–including WIT and West Indies–with significant assets (*see* Prendergast Suppl. Decl. Ex. Q), the Court ordered all three defendants to pay substantial fines and restitution, *id.* at 315. On the basis of the Price Waterhouse re-port and the evidence of tax avoidance, the BIR initiated audits of the Oelsners, West Indies, and WIT.

In letters dated December 21, 1995, the BIR notified the Oelsners, West Indies, and WIT that it would make immediate "jeopardy assessments," pursuant to I.R.C. sections 6861 and 6862, to recover amounts owed by each taxpayer. A jeop-ardy assessment may be collected without awaiting the outcome of any challenge brought by the taxpayer in tax court. I.R.C. § 6861.[4] The procedure is available "in cases where the more routine methods for collection of taxes may be ... 'jeopar-dized' to some degree if collection efforts are delayed." *Garzon v. United States,* 605 F.Supp. 738, 741 (S.D.Fla.1985). The BIR apparently believed, on the basis of the Price Waterhouse report, that the Oelsners, West Indies, and WIT would try to avoid collection by shielding their as-sets. Soon after issuing the jeopardy as-sessment notices, on January 12, 1996, the BIR sent each of the three taxpayers a "notice of deficiency" indicating their tax liability, as required by V.I.C. title 33, section 942.[5] Following an administrative hearing on February 29, 1996, the Bu-reau's director found that each of the jeop-ardy assessments was reasonable and that the claimed deficiencies were appropriate. (Prendergast Decl. Ex. H.) Thereafter, in April and May 1996, the Oelsners and the two companies brought separate chal-lenges to each jeopardy assessment and notice of deficiency.

**3.** By Oelsner's own description, WIT was en-gaged in the business of acting on behalf of foreign investors as the nominee owner of U.S. vessels. In some cases, the company would merely take and hold title to the vessel until the U.S. Maritime Administration ap-proved the transfer of the vessel to a foreign corporation. (Oelsner Aff. ¶ 2.)

**4.** Section 6861 makes the following provision for the recovery of income, estate, gift, and certain excise taxes:

If the [Treasury] Secretary believes that the assessment or collection of a deficiency ... will be jeopardized by delay, he shall ...

immediately assess such deficiency (togeth-er with all interest, additional amounts, and additions to the tax provided for by law), and notice and demand shall be made by the Secretary for the payment thereof.

I.R.C. § 6861. Section 6862 makes similar provision for the collection of any other taxes authorized under the federal code. I.R.C. § 6862. These sections of the I.R.C. are mir-rored in V.I.C. title 33, sections 1361 and 1362.

**5.** The Virgin Islands' notice of deficiency re-quirement mirrors I.R.C. section 6212.

All but one of those challenges has been resolved. On August 4, 2000, this Court dismissed the two Oelsner cases, based on the BIR's stipulation that there was in fact no tax deficiency.[6] On June 1, 2001, the Court likewise dismissed, per agreement of the parties, both West Indies cases and WIT's challenge to the jeopardy determination. The jeopardy assessment cases were dismissed because there was no evidence that the Government had actually made the assessments, rendering West Indies and WIT's challenges moot. The West Indies notice of deficiency case was dismissed for mootness as well as lack of jurisdiction. West Indies allegedly owed wage withholding taxes,[7] which generally are summarily assessable and do not require a notice of deficiency. I.R.C. § 6212 (notice of deficiency procedures apply to income, gift, estate, and certain excise taxes); 33 V.I.C. § 942 (procedures apply to income taxes); *Marvel v. United States*, 719 F.2d 1507, 1514 (10th Cir.1983). As discussed *infra*, employment withholding taxes generally are not within the jurisdiction of the Tax Court. Additionally, the Government conceded that while it had the power to immediately collect the withholding taxes, it had failed to do so and was now time-barred from making the assessment. The only remaining matter for disposition, therefore, is WIT's petition for redetermination of its tax deficiency.

## B. BIR's Explanation of WIT Deficiency

The BIR determined that WIT owed taxes in the amount of $788,054–and a total of $1,464,466, inclusive of penalties and interest–for its fiscal years 1989 through 1992, as set forth in the table below.

| Year | Tax | Penalty | Interest | Total |
|---|---|---|---|---|
| FY1989 | $330,379.80 | $82,594.95 | $242,791.80 | $655,766.65 |
| FY1990 | 359,390.70 | 89,847.68 | 199,173.46 | 648,411.84 |
| FY1991 | 82,784.70 | 20,696.18 | 33,061.02 | 136,541.90 |
| FY1992 | 15,498.60 | 3,874.65 | 4,372.71 | 23,745.96 |

(Prendergast Decl. Exs. D at 1 (notice of jeopardy assessment), E at 1 (notice of deficiency).)[8] It is undisputed that the Bureau based this alleged deficiency on deductions totaling $2,626,846, which WIT listed on its tax returns as "cost of goods sold" and labeled on its financial statements as "voyage expenses." (*Id.* Ex. F (BIR letter of Feb. 29, 1996); Oelsner Aff. Ex. 13 at 51–54 (deposition of Revenue Agent Harold Hodge).) The legal reasoning upon which the BIR relied to find the tax liability, however, is not so clear. The Government contends that it has always viewed the voyage expenses as payments

---

**6.** The government originally claimed that the Oelsners owed an additional $711,327 for the 1993 tax year. In their jeopardy assessment and deficiency challenges, which were later consolidated, the Oelsners claimed that the BIR had erred in calculating their income and in disallowing a deduction for a bad debt.

**7.** The Government claimed in the notice of jeopardy assessment and notice of deficiency that West Indies owed $200,731 in wage withholding taxes for fiscal years 1989 through 1993.

**8.** The tax years in question cover a period running from October 1, 1998, to September 30, 1992. (Oelsner Aff. Exs. 3, 4, 6.) The notice of jeopardy assessment and notice of deficiency both identify the tax periods with numbers such as "8912" and "9012," suggesting that the periods end in December–in other words, that the periods are calendar years. It is clear, however, that the deficiencies are based on WIT's fiscal year, since, as discussed *infra*, the deficiency amounts correspond with the "cost of goods sold" line items on WIT's fiscal-year tax returns. (*Id.*)

of Virgin Islands source income to foreign corporations. Such payments generally are subject to income withholding taxes. I.R.C. § 1442; 33 V.I.C. § 542. WIT counters that the Bureau initially viewed the voyage expenses as wages subject to employment withholding taxes, and only later adopted the position that the payments triggered an income withholding liability.[9]

The record of BIR's dealings with WIT admits of three potential grounds upon which the Bureau originally might have relied. The first is I.R.C. section 3402, which requires employers to deduct and withhold taxes from the wages paid to all employees. I.R.C. § 3402(a)(1). The second possibility, I.R.C. section 1442, reflects the view now pressed by the Government. A third ground, similar to the second, is I.R.C. section 1441, which requires withholding of income, including wages, paid to nonresident aliens. I.R.C. § 1441.[10] Further muddying the waters is the fact that section 1441 contemplates both employment and income withholding.[11]

The notice of deficiency that WIT received well demonstrates the opacity of the Government's original position. In the first paragraph, the word "income" has been crossed out and the word "withholding" inserted, so that the letter opens as follows: "This letter is to notify you–as required by law–that we have determined your *withholding tax liability* as shown above." (Prendergast Decl. Ex. D. at 1 (emphasis added).) At no point does the notice distinguish between employment withholding and income withholding. The notice does cite I.R.C. section 3402, the general wage withholding statute, as the basis for the tax assessment. Unfortunately, any clarity afforded by this citation is negated by the thirty-percent tax rate applied in both the deficiency notice and the earlier notice of jeopardy assessment.[12] Wages are subject to a graduated withholding rate under section 3402, not a flat percentage. Treas. Reg. §§ 31.3402(b)–1, 31.3402(c)–1; IRS Circular E (tax tables).

Thirty percent is, however, the rate applied under the foreign payments provisions, and tax returns filed by the Government on behalf of WIT indeed suggest that the Bureau intended to rely on either section 1441 or 1442.[13] Under the regulations implementing both sections, U.S. payors of

9. As used throughout this Opinion, "employment withholding" refers to wages taxed at their source; "income withholding" refers to collection of taxes on non-wage income.

10. Section 3402 and the foreign payments provisions impose burdens that are mutually exclusive rather than cumulative. Withholding from the nonresident alien's U.S. wages is not required under sections 1441 and 1442 if those wages are subject to withholding under section 3402. Treas. Reg. § 1.1441–4(b)(1).

11. So, too, does section 1442, but it is difficult to imagine payment of a salary or wages to a corporation. By their express terms, section 1442 applies only to foreign corporations and section 1441 only to nonresident individuals. I.R.C. §§ 1441, 1442.

12. The thirty-percent tax rate is not explicit in the two notices, which only state the amount of the deficiency ($788,054). (Prendergast Decl. Exs. D, E.) The rate can be inferred, however, from WIT's $2,626,846 in voyage-expense deductions, which the parties understood to be the amount that triggered the alleged tax liability. That the BIR applied a thirty-percent rate to the voyage expenses is confirmed in other correspondence. (*See, e.g.,* Prendergast Decl. Ex. B (Hodge interagency memorandum of Dec. 19, 1995); *id.* Ex. E (BIR letter of Feb. 29, 1996, to Petitioner's counsel).)

13. As discussed *infra,* thirty-percent is the incorrect rate even if section 1441 or section 1442 is the basis for the tax liability. The V.I.C. provides an exception to the generally applicable rate, taxing Virgin Islands source income at ten percent. 33 V.I.C. §§ 541, 542.

income to nonresident aliens must not only withhold taxes on the income but also report the payments on a Form 1042 tax return. Treas. Reg. §§ 1.1441–2, 1.1461–1(b); *see also* Treas. Reg. § 1.1442–1 (making § 1441 regulations applicable to § 1442).[14] When a Virgin Islands payor does not file the required return, the BIR–like the IRS–is authorized to complete a substitute return. 33 V.I.C. § 721 (mirroring I.R.C. § 6020). On December 21, 1995, the same day the BIR sent the notices of jeopardy assessment, the Bureau's director executed substitute Form 1042 returns for WIT, listing the voyage expense amounts for fiscal years 1989 through 1992. (Prendergast Aff. Ex. C.) The tax returns do not specify which of the two statutes is being invoked; nor do they state whether the foreign payments are wage- or non-wage income.

A December 19, 1995, memorandum written by Agent Hodge, who investigated WIT, again fails to explicitly identify the basis for WIT's tax liability:

> The taxpayers showed me records and information pertaining to withholding taxes because that was the focus of the examination. . . . No information was shown for WIT Equipment Company, Inc. Mr. Oelsner said that the WIT Equipment Company, Inc. was a Pananmanian [sic] Company plus the employees were from Panama and no withholding was necessary. On the WIT Equipment Company, Inc., I asked about the costs of Goods sold voyage expense. Mr. Oelsner answer [sic] was that WIt [sic] Equipment Company paid ninety five percent (95%) of income to the Panamanian Company

that takes care of its own barge expenses such as labor.

.　　.　　.　　.　　.

For the WIT Equipment Company, Inc. the withholding was calculated for the entire cost of goods sold (the voyage expense) at thirty percent (30%) rate. (Prendergast Decl. Ex. B.) While the memorandum does not distinguish between employment and income withholding, Agent Hodge testified at his deposition that the BIR audited WIT because it did not deduct any salaries or wages on its corporate tax return, and that he considered the voyage expenses to be "mainly for wages." (Oelsner Aff. Ex. 13 at 23, 53–54.) Hodge's focus on wages and application of the thirty-percent rate suggest reliance on section 1441.

In contrast to the ambiguity of earlier documents, two BIR letters sent to WIT in early 1996 clearly identify employment withholding as the basis for the company's liability. One letter, dated February 29 and offered in explanation of the BIR's calculations, refers explicitly to section 1441: "WIT Equipment—The examiner used the figures given as voyager's expenses . . . as the base figure for salaries. Voyager expenses multiplied by 30% (IRC § 1441) was [sic] used to arrive at the withholding amount due to the Bureau. . . ." (Prendergast Decl. Ex. F.) A letter dated April 2, 1996, denying West Indies and WIT's administrative appeals, states: "The jeopardy assessment was reasonable under the circumstances. The principal figure in both corporations, James Oelsner, was convicted for employing illegal aliens. The Bureau assessed withholding taxes against these corporations that employed workers in the Virgin Islands." (*Id.* Ex. H.) Notably, however,

---

**14.** The U.S. payor, referred to in the regulations as the "withholding agent," must also submit, for each foreign recipient of U.S. source income, an informational return documenting the amounts paid. Treas. Reg. § 1.1461–1(c).

the Government's May 10, 1996, answer to WIT's petition for redetermination does not identify the statute serving as the basis for the deficiency. (Oelsner Aff. Ex. 12.)

The first references to I.R.C. section 1442 are found in two requests for information sent by the Bureau to WIT in 1997. In a letter dated July 21, 1997, the BIR requested, along with any documents related to employment of foreign workers by West Indies and WIT, the following discovery:

> Any documents that demonstrate that Antilles Marine Services Co., Inc. is subject to taxation by the United States or by the U.S. Virgin Islands, or that otherwise demonstrate that the payments made by WIT Equipment Company to Antilles Marine Services Co., Inc. were not subject to withholding under Title 26 U.S.C. § 1442, as provided in the regulations found at 26 C.F.R. § 1.1441–1 *et seq.*

(Prendergast Decl. Ex. K.) Identical language is found in interrogatories the Government filed on November 24, 1997. (Prendergast Decl. Ex. M.) As discussed *infra*, Antilles Marine Services Company, Inc. ("AMSCO"), was the actual recipient of the voyage-expense payments.

### C. WIT's Explanation of Voyage Expenses

Throughout this litigation, WIT has contended that the voyage expenses were not wages paid to nonresident aliens, but freight revenues paid to AMSCO, the owner of vessels for which WIT acted as the chartering agent. In 1988, WIT and AM-SCO, a Panamanian corporation, entered into an agreement whereby WIT would contract with third parties to charter AMSCO vessels for shipping, towing, and salvage operations in the U.S. Virgin Islands. (Oelsner Aff. ¶ 6.) By its own terms, the purpose of the agreement was to allow AMSCO vessels to be used in the Virgin Islands without requiring AMSCO itself to do business in the United States. (Prendergast Aff. Ex. O.) Under the agreement, all operating expenses, including crew wages, were to be paid by AMSCO or the customers. (*Id.*) Customers would pay freight charges to WIT, which would retain five percent of the revenue in exchange for its services. WIT would forward the remaining ninety-five percent of the revenue to AMSCO. (*Id.*) The voyage-expense deductions, WIT maintains, reflect freight revenues paid to AMSCO from 1989 through 1992.[15] WIT actually paid the revenues to three Oelsner-owned corporations–Cargo Services, Inc., Oceanic Operations Corporation, and West Indies– which allegedly acted as agents for AMSCO. (Oelsner Aff. ¶ 15; *id.* Ex. 7 (copies of checks).) Oelsner further avers that AMSCO was at all relevant times owned by longtime friends, the Janson family, and that he never held a financial stake in the company. (Oelsner Aff. ¶¶ 6, 7.)

Although the I.R.C. provides a number of exemptions from the obligation under section 1442 to withhold tax on payments to foreign corporations, WIT apparently made no effort, prior to briefing and argument on the instant motions, to demonstrate that it qualified for an exemption.

---

**15.** Although WIT has consistently argued that the voyage expenses were revenues paid to AMSCO, one paragraph of its petition inexplicably refers to wages:

> The facts upon which the Taxpayer relies are[ ] (a) the wages paid by Taxpayer were paid to nonresident aliens in its capacity as

agent for a foreign corporation; [and] (b) the nonresident aliens were seamen serving aboard vessels under foreign flag not engaged in a trade or business in the United States or the U.S. Virgin Islands.

(Petition for Review of Income Tax Deficiencies ¶ 6.)

In response to the BIR's July 1997 request for documentation relating to an exemption under section 1442, Petitioner's counsel stated: "This request highlights the Government's misunderstanding of the operations of foreign flag carriers engaged in the international shipping business, even though these and related companies have been operating in the Caribbean under essentially similar practices for over thirty years...." (Prendergast Aff. Ex. L (letter of Aug. 25, 1997).) Replying to an identical request in the BIR's November 1997 interrogatories, Plaintiff's counsel wrote: "Interrogatory number one is so vague as to be incapable of answer." (*Id.* Ex. N. (answers to interrogatories filed Jan. 5, 1998).)

### D.   Government's Current Position

Whatever the Government's original position, the BIR currently agrees with WIT's explanation of the voyage expenses and contends that the payments are subject to the requirements of section 1442. While affirming that WIT owes a deficiency in income withholding taxes, however, the BIR now concedes that the notice also contained mistakes in the calculation of the deficiency. The notice implicitly applied a thirty-percent withholding rate to arrive at a deficiency of $788,054, exclusive of statutory penalties and interest. Although thirty percent is the withholding rate applicable to U.S. source income under section 1442, payments of Virgin Islands source income to foreign corporations are subject to a withholding rate of only ten percent. 33 V.I.C. § 542; *see also* I.R.C. § 934

(authorizing departures from I.R.C. tax rates in the case of Virgin Islands income). Additionally, the Bureau asserts that it should have calculated the deficiency on a calendar-year basis, since WIT was required to prepare and file a withholding tax return, Form 1042, on a calendar-year basis. Treas. Reg. §§ 1.1461–1(b), 1.1461–2(b). Recalculating the deficiency at a ten percent rate and for calendar years, the Bureau arrives at a total of $235,153–again exclusive of penalties and interest–as set forth in the table below:

| Year | Tax |
|------|-----|
| 1989 | $112,544.22 |
| 1990 | 96,746.46 |
| 1991 | 21,987.78 |
| 1992 | 3,874.68 |

(Mem. Supp. Resp't's Mot. Summ. J. at 25.) [16]   While WIT contends that it owes no tax whatsoever, it does not dispute that this calculation should govern in the event that the company is held liable for a deficiency.

### III.   *PETITIONER'S MOTION TO DISMISS*

Petitioner's motion to dismiss presents two main arguments. First, Petitioner contends that this Court, as the Virgin Islands analog of the Tax Court, lacks jurisdiction because the notice of deficiency invokes I.R.C. section 3402, a wage-withholding statute. Second, Petitioner argues that even if the notice confers jurisdiction, the matter nonetheless should be dismissed because Respondent is estopped from presenting any theory other than wage withholding as the basis for the deficiency.

**16.** The Bureau made this calculation as follows. It first applied a ten percent tax rate to the voyage expenses listed in WIT's tax returns. Then it divided each fiscal year's deficiency by twelve to arrive at a monthly amount. Next, it added three months from fiscal year 1990 to nine months from fiscal year 1989 to come up with an amount for calendar year 1989, three months from fiscal year 1991 and nine months from fiscal year 1990 to calculate an amount for calendar year 1990, and so on. Calendar year 1992's amount reflects only nine month's worth of withholding, because the last fiscal year in the notice of deficiency ended Sept. 30, 1992. (*Id.*)

## A. Jurisdiction

■ As the Tax Court, this Court has only the limited jurisdiction provided for in I.R.C. section 7442. This jurisdiction consists of taxes imposed by subtitle A (income taxes), subtitle B (estate and gift taxes), and chapters 41 through 45 of the I.R.C. (certain excise taxes), all of which are subject to the notice of deficiency requirements. I.R.C. §§ 6212, 6213; 33 V.I.C. §§ 942, 943; *see also Medeiros v. Comm'r*, 77 T.C. 1255, 1260, 1981 WL 11307 (1981). The Court lacks jurisdiction over employment taxes, which are part of subtitle C and to which the deficiency notice procedures are inapplicable. *Judd v. Comm'r*, 74 T.C. 651, 652–53, 1980 WL 4463 (1980). I.R.C. sections 1441 and 1442, although they contemplate foreign payments of wages as well as non-wage income, are part of subtitle A; section 3402 is part of subtitle C.

■ When the IRS–or, in the case of the Virgin Islands, the BIR–determines that a taxpayer has not paid all of the income tax due, the agency sends the taxpayer a notice of deficiency by certified or registered mail. I.R.C. § 6212; 33 V.I.C. § 942. Once the notice has been mailed, the taxpayer has ninety days to file a petition for redetermination of the deficiency. I.R.C. § 6213; 33 V.I.C. § 943. The notice of deficiency is the taxpayer's "ticket to the Tax Court" and is a prerequisite for Tax Court jurisdiction. *Robinson v. United States*, 920 F.2d 1157, 1158 (3d Cir.1990) (quoting *Delman v. Comm'r*, 384 F.2d 929, 934 (3d Cir.1967), *cert. denied*, 390 U.S. 952, 88 S.Ct. 1044, 19 L.Ed.2d 1144 (1968)). Until ninety days have passed, the revenue agency can neither assess the tax nor initiate collection procedures in court. I.R.C. § 6213; 33 V.I.C. § 943; *see also Holof v. Comm'r*, 872 F.2d 50, 53 (3d Cir.1989). If the taxpayer elects to challenge the determina-

tion, this restraint on collection continues until the decision of the Tax Court becomes final. I.R.C. § 6213; 33 V.I.C. § 943; *see also Robinson*, 920 F.2d at 1158. "By providing an opportunity to litigate the merits of the deficiency in the Tax Court without requiring payment of the full amount allegedly owed, the [deficiency notice procedures] provide[ ] substantial benefits to taxpayers." *Robinson*, 920 F.2d at 1158.

■ These procedural benefits also accrue to those taxpayers, such as WIT, that dispute the Tax Court's jurisdiction. Petitioning for redetermination and subsequently moving to dismiss for lack of subject matter jurisdiction is a means of seeking a determination that the notice is invalid and thus that the deficiency may not be collected. *Cf., e.g., Roots v. Comm'r*, No. 14438–98, 1999 WL 153736 (U.S.Tax Ct. Mar. 23, 1999); *Stamm Int'l Corp. v. Comm'r*, 84 T.C. 248, 1985 WL 15312 (1985); *Midland Mortgage Co. v. Comm'r*, 73 T.C. 902, 1980 WL 4567 (1980); *Wessel v. Comm'r*, 65 T.C. 273, 1975 WL 3183 (1975). In this case, Petitioner contends that the reference to section 3402, which is part of the wage withholding provisions of subtitle C, renders the notice of deficiency facially invalid and deprives this Court of jurisdiction. Petitioner's argument thus compels a consideration of what is required of a notice of deficiency and what sorts of shortcomings invalidate the notice.

■ As a number of decisions have noted, the I.R.C. does not specify the form that notices of deficiency must take or what information they must contain. *See, e.g. Geiselman v. United States*, 961 F.2d 1, 4 (1st Cir.1992); *Stamm*, 84 T.C. at 252–53; *Jarvis v. Comm'r*, 78 T.C. 646, 655, 1982 WL 11081 (1982). It is clear, however, that the purpose of the notice is merely to give the taxpayer notice that a deficien-

cy is to be assessed and an opportunity to challenge that determination in the Tax Court. *Comm'r v. Stewart*, 186 F.2d 239, 241 (6th Cir.1951); *Olsen v. Helvering*, 88 F.2d 650, 651 (2d Cir.1937); *Wessel*, 65 T.C. at 277 (1975). In *Olsen*, an early case involving the notice of deficiency procedures, the Second Circuit held that the notice is sufficient as long as it satisfies this limited purpose: "[T]he notice is only to advise the person who is to pay the deficiency that the Commissioner means to assess him; anything that does this unequivocally is good enough." *Olsen*, 88 F.2d at 651. In keeping with *Olsen*, subsequent decisions have required only that the notice identify the taxpayer, the tax year involved, and the amount of the deficiency. *See, e.g., Geiselman*, 961 F.2d at 5; *Estate of Yaeger v. Comm'r*, 889 F.2d 29, 35 (2d Cir.1989), *cert. denied*, 495 U.S. 946, 110 S.Ct. 2205, 109 L.Ed.2d 531 (1990); *Stoecklin v. Comm'r*, 865 F.2d 1221, 1224 (11th Cir.1989); *Scar v. Comm'r*, 814 F.2d 1363, 1367 (9th Cir. 1987); *Alford v. Comm'r*, 800 F.2d 987, 988 (10th Cir.1986); *Donley v. Comm'r*, 791 F.2d 383, 384–85 (5th Cir.1986); *Stewart*, 186 F.2d at 242. In particular, courts have held that the notice need not articulate the factual or statutory bases for the deficiency. *Geiselman*, 961 F.2d at 5 (observing that taxpayers have ample opportunity to discover the grounds for the deficiency once they petition the Tax Court for redetermination); *Barnes v. Comm'r*, 408 F.2d 65, 68 (7th Cir.1969); *Jarvis*, 78 T.C. at 655.

■ In cases involving errors or inconsistencies in the deficiency notice, the outcome has likewise hinged on whether the notice accomplished its limited purpose of apprising the taxpayer of the year and amount of the deficiency. For example, a notice may be invalid if it is misaddressed, but only if the taxpayer did not actually receive the notice. *Compare, e.g., Council v. Burke*, 713 F.Supp. 181 (M.D.N.C.1988) (holding that notice with typographical error in address was invalid because there was no evidence the taxpayers ever received it) *with Goolsby v. Tomlinson*, 246 F.Supp. 674 (S.D.Fla.1965) (holding that notice with wrong street in address was valid because it was delivered despite the error). Many errors and inconsistencies, however, do not frustrate the purpose of the notice. In *Wessel*, the Tax Court upheld a notice even though it had been signed by an official who had no authority to do so under IRS policy. *Wessel*, 65 T.C. at 275–77. The Court noted the absence of any statutory requirement that the notice be signed at all, and found that the error had not deprived the taxpayer of notice of the liability. *Id.* at 277 (citing *Olsen*, 88 F.2d at 651). The Tax Court has also held that inconsistencies in computations, which are included in the deficiency notice, do not necessarily invalidate the notice, provided the document conveys the essential fact that a deficiency has been determined. *See Pietz v. Comm'r*, 59 T.C. 207, 213–14, 1972 WL 2506 (1972); *Mayerson v. Comm'r*, 47 T.C. 340, 348–49, 1966 WL 1129 (1966). Even a notice that propounds alternate factual bases for a deficiency–suggesting that one of those bases is erroneous–is acceptable. *See Malat v. Comm'r*, 302 F.2d 700, 704 (9th Cir.1962), *cert. denied*, 371 U.S. 934, 83 S.Ct. 308, 9 L.Ed.2d 271 (1962).

■ On the basis of the above discussion, it is apparent that the WIT notice of deficiency would have been valid had it contained no statutory reference whatsoever. The notice accomplished its purpose by stating a claimed deficiency of $1.46 million for Petitioner's fiscal years 1989 through 1992. Nor does the inclusion of a gratuitous, erroneous reference to I.R.C. section 3402 invalidate the notice, since the

notice's purpose was accomplished despite the error. That the citation to section 3402 was merely an error is manifest. The Court can fathom no reason why the BIR would intentionally subject itself to the notice of deficiency requirements if–as is the case under section 3402 and the rest of subtitle C–the Bureau could have summarily assessed the tax. Had the Government really believed that section 3402 was the basis for the deficiency, then surely at some point it would have informed WIT that the notice was unnecessary and that it was proceeding with the assessment. Moreover, nowhere else in the record is there a citation to section 3402. BIR correspondence with WIT, as well as the substitute tax returns filed by the Government, all invoke sections 1441 and 1442, to which the notice of deficiency procedures are applicable. And the graduated tax rate implicit in the notice of deficiency is consistent not with section 3402, but with sections 1441 and 1442. None of this is to say, however, that the Government did not hold onto its wage-withholding theory for some time after issuing the notice of deficiency. From February through April 1996, BIR letters to WIT referred to payments of wages to illegal aliens, not payments of income to foreign corporations. (Prendergast Decl. Exs. F, H.) But, importantly, the statute the BIR relied upon during this period, section 1441, is subject to the jurisdiction of the Tax Court.

Because the notice's reference to section 3402 was merely an error, and because that error did not compromise the effectiveness of the notice in any relevant way, the Court finds that it has jurisdiction over the WIT deficiency.[17] The separate question of whether the Government should be estopped from presenting its income withholding theory is one to which the Court now turns.

## B. Estoppel

It is clear that of the three statutes relied upon at various times by the BIR, only section 1442, which requires withholding on payments of income to foreign corporations, is a potential basis for the claimed deficiency. Section 3402 is inapplicable since the "voyage expenses" WIT paid to AMSCO were non-wage income; section 1441 has no bearing because the payments were made to a company, not an individual nonresident alien. WIT argues that the BIR should be estopped from basing the deficiency on section 1442 because the Bureau did not indicate that it would rely on that statute until well after WIT had filed its petition for redetermination. Operation of estoppel, in turn, would require dismissal, since the Bureau would

---

**17.** Petitioner has also contended that the Court should look to the West Indies deficiency notice as a basis for dismissing this action. The BIR having conceded that the Court lacks jurisdiction in the West Indies case, so the argument runs, the Bureau cannot now argue that the Court has jurisdiction over the virtually identical WIT notice. It is true that both notices cite I.R.C. section 3402 and vary only with respect to the tax year and claimed amount of the deficiency. Were the positions taken on the basis of these two notices manifestly at odds with one another, judicial estoppel might well bar the BIR from asserting its current position. *See, e.g., Reynolds v. Comm'r,* 861 F.2d 469, 472 (6th Cir.1988)

("The judicial estoppel doctrine protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding."). That the BIR's positions are different, however, does not signify an inconsistency if the underlying claims are not the same. In the West Indies case, the BIR continued to believe that the deficiency was based on a failure to withhold wage taxes, and therefore assented to dismissal. In this case, notwithstanding the notice's citation of section 3402, the Government actually believes the deficiency to be based on payments of income to a foreign corporation.

be able to present no valid basis for the deficiency.

■ Since the question was first addressed in the 1930s, courts generally have refused to bar the Government from supporting a deficiency with a particular theory, even if that theory was not included in the notice of deficiency and may not have been introduced until late in the proceedings. In *Helvering v. Gowran*, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224 (1937), for instance, the Supreme Court held that the IRS was entitled to present, on appeal, a theory concerning the taxability of certain stock dividends, even though it had not relied upon that theory before the Board of Tax Appeals (the predecessor to the Tax Court). *Id.* at 246, 58 S.Ct. at 158. The Court stated the issue as follows:

> The ultimate question before the [Circuit Court of Appeals] was whether ... the Board had erred in affirming the Commissioner's determination that the additional taxes were due. If the Commissioner was right in his determination, the Board properly affirmed it, even if the reasons which he had assigned were wrong. And, likewise, if the Commissioner's determination was right, the Board's affirmance of it should have been sustained by the Court of Appeals, even if the Board gave a wrong reason for its action. By this rule the government was entitled to urge in the Court of Appeals that on the undisputed facts the Board's decision was correct because of the [new] theory.

*Id.; see also Hormel v. Helvering*, 312 U.S. 552, 559, 61 S.Ct. 719, 85 L.Ed. 1037 (1941). Citing *Gowran* and *Hormel*, the Third Circuit held in *Irish v. Commissioner*, 129 F.2d 468 (3d Cir.1942), that the IRS was "free to sustain [its] assessment upon any statutory ground which supports it," including grounds that first had been introduced in oral arguments before the Board of Tax Appeals. *Id.* at 470. Additionally, the Tax Court has stated that a deficiency, if otherwise correct, must not be disapproved simply because it is predicated upon an erroneous ground stated in the deficiency notice. *A. Finkenberg's Sons, Inc. v. Comm'r*, 17 T.C. 973, 980, 1951 WL 283 (1951). The logical import of this decision is that the collecting agency may present new arguments if it finds that the grounds stated in the notice are erroneous.

To be sure, courts have recognized that allowing the Government to present new reasons for a deficiency may prejudice the taxpayer, and have suggested that under certain circumstances they would bar introduction of those new theories. The fullest exposition of this concern is found in *Commissioner v. Transport Manufacturing and Equipment Co.*, 478 F.2d 731 (8th Cir.1973), which involved an argument that was raised for the first time in post-trial briefs:

> If a violation of a particular Internal Revenue Code section, Treasury regulation, or theory based on sections or regulations is involved, the Commissioner should notify the taxpayer of that section, regulation or theory. The failure to advise the taxpayer of such information is extremely prejudicial. Deficiency assessments are usually presumptively correct, and the taxpayer has the burden to prove them wrong. *The taxpayer works at an extreme disadvantage in trying to invalidate deficiency assessments if he does not specifically know why the Commissioner is challenging the taxpayer.* If the notice of deficiency does not state the reason for the deficiency, the Commissioner should then inform the taxpayer of the Code sections and theories in his answer....

*Id.* at 735 (footnotes and citations omitted) (emphasis added). The court went on to

state, however, that the IRS did not necessarily lose its right to pursue a theory that it did not raise before or at trial; the basic consideration was whether the taxpayer had been surprised or disadvantaged. *Id.* at 736. The Eighth Circuit found that surprise certainly existed where the issue was not raised until after trial, and concluded that the Tax Court properly declined to hear the new theory. *Id.* Applying the same analysis, the courts in *Luke v. Commissioner,* 351 F.2d 568 (7th Cir. 1965), and *Mills v. Commissioner,* 399 F.2d 744 (4th Cir.1968), upheld presentation of theories not found in the deficiency notices because the taxpayers had been sufficiently apprised of the issues before trial. *Luke,* 351 F.2d at 573; *Mills,* 399 F.2d at 748.[18]

■ Petitioner has rather disingenuously argued that "the Government should not at this late date be permitted to raise Code Section 1442, an entirely new basis for the issuance of the deficiency notice." (Mem. Supp. Pet'r's Mot. Dismiss & Cross–Mot. Summ. J. at 21.) It is true that the BIR failed to raise section 1442 in either the deficiency notice or its answer to WIT's petition for redetermination. (Prendergast Decl. Ex. D; Oelsner Aff. Ex. 12.) But WIT received discovery requests from the Bureau in July and November 1997 that clearly identified section 1442 as a potential basis for withholding tax liability. (Prendergast Decl. Exs. K, M.) These requests, propounded more than three years before briefing on the

instant motions began, certainly fulfill the requirement that WIT be apprised of all issues before a decision on the merits. Nor can Petitioner credibly argue that it was surprised or disadvantaged by the Government's reliance on section 1442 after taking full advantage of the opportunity to address this theory in its motion briefs. The Court therefore concludes that the BIR is free to present section 1442 as the basis for WIT's tax deficiency.

## IV. MOTIONS FOR SUMMARY JUDGMENT

Both parties have moved for summary judgment with respect to the Government's claim that WIT's voyage expenses are subject to withholding as payments of income to a foreign corporation. The crux of the dispute is whether those payments are exempt from taxation as income derived from international shipping.

The I.R.C. imposes a thirty-percent tax on income received by foreign corporations from sources within the United States. I.R.C. § 881. Section 1442 of the I.R.C. requires U.S. payors of such income to deduct and withhold that amount of tax. As noted *supra,* in the case of Virgin Islands source income, the withholding rate is limited to ten percent. 33 V.I.C. § 542. Section 1442 contains a number of exceptions to this withholding requirement, none of which are relevant here. Exceptions are also contained in other sections of the tax code, including I.R.C. section 883.

---

**18.** The "surprised or disadvantaged" standard is wholly consistent with the cases Petitioner has cited for the proposition that issues not pleaded will not be considered. *See, e.g., Markwardt v. Comm'r,* 64 T.C. 989, 997, 1975 WL 3103 (1975); *Frentz v. Comm'r,* 44 T.C. 485, 490–91, 1965 WL 1324 (1965), *aff'd,* 375 F.2d 662 (6th Cir.1967). In *Markwardt,* the Tax Court clarified the standard for determining whether an issue was properly before the court:

"This Court has held on numerous occasions that it will not consider issues which have not been pleaded. Whether an issue has been properly raised depends upon whether the opposing party has been given fair notice of the matter in controversy. We must determine whether the Commissioner was surprised and put at a disadvantage when the . . . issue was raised."
*Id.* at 997, 1975 WL 3103.

That section exempts from income, and therefore from withholding, "[g]ross income derived by a corporation organized in a foreign country from the international operation of a ship or ships if such foreign country grants an equivalent exemption to corporations organized in the United States." I.R.C. § 883(a)(1). The exemption is available only if more than 50 percent of the foreign corporation's value is owned by residents of that foreign country or another country that provides a reciprocal exemption to U.S. companies. I.R.C. § 883(c)(1).

Petitioner does not appear to dispute that the withholding requirement of section 1442 is facially applicable to the voyage-expense payments. WIT contends, however, that the payments are exempted from income under section 883, and therefore that there was no income to withhold under section 1442. The parties disagree not only regarding the sufficiency of the evidence regarding the exemption but also with respect to which side bears the burden of proof.

### A. Burden of Proof

The District Court of the Virgin Islands has not adopted Tax Court Rule 121, which establishes the Tax Court's summary judgment standard. However, that standard is virtually identical to that contained in Federal Rule of Civil Procedure 56, which provides that summary judgment may be granted only when materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Serbin v. Bora Corp.*, 96 F.3d 66, 69 n. 2 (3d Cir.1996). In deciding whether there is a disputed issue of material fact, a court must grant all reasonable inferences from the evidence to the non-moving party. The threshold inquiry is whether there are "any genuine factual issues that

properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Serbin*, 96 F.3d at 69 n. 2 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). Thus, if the non-movant's evidence is merely "colorable" or is "not significantly probative," a court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511.

■ Tax Court Rule 142, which has been adopted by this Court, *see* L. Civ. R. 71A.1, provides that the burden of proof at trial generally is on the petitioner. T.C.R. 142(a). The determination of a deficiency is afforded a presumption of correctness, *Sullivan v. United States*, 618 F.2d 1001, 1008 (3d Cir.1980), and it is the taxpayer's responsibility to show that the determination is arbitrary or erroneous. *Anastasato v. Comm'r*, 794 F.2d 884, 887 (3d Cir.1986) (citing *Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 290, 79 L.Ed. 623 (1935)). Rule 142 also provides, however, that "in respect of any new matter, increases in the deficiency, and affirmative defenses," the burden of proof is shifted to the respondent. T.C.R. 142(a). The criteria for determining whether the respondent has raised a "new matter" are as follows:

A new theory that is presented to sustain a deficiency is treated as a new matter when it either alters the original deficiency or requires the presentation of different evidence. A new theory which merely clarifies or develops the original determination is not a new matter in respect of which respondent bears the burden of proof.

*Shea v. Comm'r,* 112 T.C. 183, 191, 1999 WL 177471 (1999) (quoting *Wayne Bolt & Nut Co. v. Comm'r,* 93 T.C. 500, 507, 1989 WL 124141 (1989) (citations omitted)).

■ The Court agrees with Petitioner that the BIR's section 1442 theory constitutes a "new matter" with respect to which Respondent must bear the burden of proof. Although the erroneous citation of I.R.C. section 3402 in the deficiency notice does not operate as a jurisdictional bar, the error is not without consequence. Unlike the jurisdictional questions, the "new matter" analysis does not consider whether the taxpayer was sufficiently apprised of the deficiency or surprised or disadvantaged by the new theory. If the new theory requires the presentation of different evidence, that is sufficient to shift the burden. WIT's defense under section 3402 would have required proof that the company did not pay wages to nonresident aliens. WIT's defense under section 1442 requires entirely different evidence–viz., that AMSCO did not receive income from a Virgin Islands source, or that the income meets the requirements for an exemption, such as the international shipping exemption of section 883. The BIR mischaracterizes the test when it argues that the notice "was legally sufficient to give fair warning of what was in issue" and that the correct theory was "patently obvious from the context of the notice." (Resp't's Reply Mem. Supp. Summ. J. at 6.) Because the Government's current theory differs in evidentiary terms from the basis cited, albeit erroneously, in the notice, the Government must bear the burden of proof at trial. The effect of this finding at the summary judgment stage is that, in opposing WIT's motion, the BIR must establish a question of fact on every element of its case–including the unavailability of the section 883 exemption. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. To prevail on its own motion, the Bureau must, of course, establish the absence of any issues of material fact.[19]

### B. Availability of Exemption

Petitioner's reliance on the section 883 shipping exemption places at issue the following factual determinations: (a) whether more than fifty percent of the value of AMSCO, a Panamanian corporation, is owned by residents of Panama; (b) whether the payments of income to AMSCO were derived from the international operation of ships; and (c) whether Panama grants an equivalent exemption to U.S.

---

**19.** Notwithstanding the finding that the Government bears the burden of proof at trial, the Court is cognizant that WIT's failure to cooperate with discovery requests should be taken into consideration. *Cf., e.g., Chilcutt v. United States,* 4 F.3d 1313, 1317–18 (5th Cir.1993) (upholding discovery sanction that deemed plaintiff's prima facie case to be established); *McGuire v. Sigma Coatings, Inc.,* 1994 WL 25545, at *1 (E.D.La.1994) (shifting burden of proof as sanction for discovery abuse). The BIR twice sent written requests to WIT for information regarding the availability of any exemption from withholding under section 1442 (Prendergast Decl. Exs. K, M), and received responses that can only be described as combative (*Id.* Exs. L, N.) It is possible that this lack of cooperation impeded the Government's ability to assemble proof that the section 883 exemption is not applicable. The Court need not determine whether a re-adjustment of the burden of proof is necessary, however, since–as discussed *infra*–it in any case would deny both parties' motions for summary judgment.

corporations. With respect to the last question, the IRS clearly recognizes Panama as granting an equivalent exemption for purposes of section 883. *See* Rev. Rul. 97–31, 1997–2 C.B. 77.

Petitioner has relied solely upon James Oelsner's affidavit to establish that AMSCO is owned by Panamanian friends of Oelsner's, the Janson family. (Oelsner Aff. ¶ 7.) The BIR has presented almost no contrary evidence, merely asserting in its briefs that Oelsner's statements concerning AMSCO's ownership are not to be believed. It being very much in Oelsner's self-interest to attest to foreign ownership of AMSCO, the Bureau argues that Oelsner's uncorroborated affidavit is insufficient to entitle WIT to summary judgment. Case law in the Third Circuit is not entirely clear on this issue. On the one hand, the Circuit held in *Demkowicz v. Commissioner*, 551 F.2d 929 (3d Cir.1977), that the Tax Court could reject the "taxpayer's uncontradicted testimony if it found the testimony to be improbable, unreasonable or questionable." *Id.* at 931. On the other, a party resisting a summary judgment motion cannot expect to rely merely upon bare assertions, conclusory allegations, or suspicions. *Tilden Financial Corp. v. Palo Tire Service, Inc.*, 596 F.2d 604, 607 (3d Cir.1979). Nor may the opposing party decline to file documentary evidence of its own and then argue that the movant's affidavit should not be accepted at face value. *See Donahey v. Wellman*, 687 F.Supp. 195, 197 (W.D.Pa.1988).

▉ The Court is hesitant to engage, at the summary judgment stage, in the *sua sponte* credibility analysis that *Demkowicz* seems to allow. Fortunately, a review of the record eliminates the need for such an analysis, at least regarding the ownership question. Although the Government has not provided specific evidence on the ownership of AMSCO, it has placed in the record evidence casting doubt on Oelsner's assertions concerning ownership of any the companies with which he is affiliated. The Price Waterhouse report, prepared in connection with the criminal proceeding against Oelsner, contains findings that Oelsner was the controlling individual in a number of corporations of which he had denied ownership. (Prendergast Suppl. Decl. Ex. Q.) Among the findings is that Oelsner used another Panamanian company, Oceanic and Finance Corporation, to hide his ownership of U.S. corporations with millions of dollars in assets. (*Id.* at 4–6.) Although only indirectly relevant, this evidence is sufficient to create a question of fact concerning the actual ownership of AMSCO, including whether the company is owned by residents of Panama. Accordingly, Petitioner's motion for summary judgment must be denied. Of course, the BIR has by no means been able to rule out that AMSCO is Panamanian-owned; the Bureau's motion for summary judgment must therefore be denied as well.

The remaining issue with respect to the section 883 exemption is whether AMSCO derived its income from the international operation of ships. Oelsner's affidavit represents at one point that "AMSCO is the *time charterer* of "various shipping vessels" but then states that [a]ll operating expenses and costs associated with the charter vessels, including hiring and paying crew members, were incurred and paid directly by the *bareboat charterer* or AMSCO." (Oelsner Aff. ¶¶ 5, 6 (emphasis added).) Whether AMSCO's vessels were time- or bareboat-chartered, or whether the business involved some combination of the two, may well be important.

Historically, the IRS has drawn a distinction between the types of charters for purposes of section 883. Rev. Rul. 74–170, 1974–1 C.B.1975. Under a time or voyage

charter, the owner of the vessel contracts out the space in the vessel for a particular voyage or period, but furnishes the crew and supplies and remains in control of the ship. Revenue Ruling 74–170 deems earnings from such charters to be shipping profits and excludable from gross income under section 883. *Id.* Under a bareboat charter, the charterer takes on functions normally provided by the owner, including furnishing a crew and supplies. Revenue Ruling 74–170 views earnings from bareboat charters as mere rents that generally are not income from "operation" of ships and are not excludable from gross income. *Id.* The ruling provides, however, that the exemption may still apply if the vessel owner is actively engaged in shipping and that the bareboat lease was an activity incidental to the owner's shipping business. Thus,

> [t]he decision whether the owner of a bareboat chartered vessel ... is entitled to the exclusion must be made on a case by case basis and will depend upon such factors as the duration of the charter ..., the frequency with which the taxpayer engages in such leasing activities, and other circumstances tending to demonstrate whether such activities are incidental to the shipping business of the taxpayer or are a separate investment or business of the taxpayer.

*Id.* A more recent private letter ruling by the IRS, however, makes no mention of this distinction and explicitly states that bareboat charters fall within the section 883 exemption. Priv. Ltr. Rul. 9447024, 1994 WL 659740 (Nov. 25, 1994). Additionally, the same revenue ruling that recognizes Panama as providing a reciprocal exemption also implies that bareboat charter income could be exempted. Rev. Rul. 97–31, 1997–2 C.B. 77. Of course, these IRS rulings have no precedential value and are not binding on any court. 26 U.S.C. § 6110(j)(3). Nonetheless, they may be persuasive evidence of the proper interpretation of the statute. *Danbury*, 820 F.2d at 625. Because the Court has already determined that summary judgment is not warranted, and because neither party addressed the interpretation of section 883 in its briefs, the Court will not engage in a construction of the statute at this point. Instead, the parties are directed to include in their trial briefs a discussion of (a) the appropriate interpretation of the phrase "[g]ross income derived ... from the international operation of a ship or ships" in section 883, and (b) the application of that interpretation to WIT and AMSCO's chartering business.

## V. CONCLUSION

For the reasons stated herein, the Court denies Petitioner's motion to dismiss for lack of subject matter jurisdiction, and also denies Respondent and Petitioner's respective motions for summary judgment. An appropriate order follows.

## ORDER ON MOTIONS TO DISMISS AND FOR SUMMARY JUDGMENT

**THIS MATTER** having come before the Court on Petitioner's motion to dismiss for lack of subject matter jurisdiction, Respondent's motion for summary judgment, and Petitioner's cross-motion for summary judgment; and

The Court having heard oral argument in this matter on June 1, 2001; and

The Court having reviewed the record and the submissions of the parties; and

For the reasons set forth in the Court's Opinion of this date;

**IT IS** this *29th* day of September, 2001, **HEREBY**

**ORDERED** that Petitioner's motion to dismiss for lack of subject matter jurisdiction is **DENIED;** and

**IT IS FURTHER ORDERED** that Respondent's motion for summary judgment is **DENIED;** and

**IT IS FURTHER ORDERED** that Petitioner's motion for summary judgment is **DENIED;** and

The parties are further directed to include in their trial briefs a discussion of (a) the appropriate interpretation of the phrase "[g]ross income derived ... from the international operation of a ship or ships" in section 883, and (b) the application of that interpretation to WIT and AMSCO's chartering business.

No costs.